| | | |
|---|---|---|
| STATE OF INDIANA ) | | IN THE NOBLE SUPERIOR COURT I |
| ) SS: | | |
| COUNTY OF NOBLE ) | | CAUSE NO._____ |

| | |
|---|---|
| JOEL RITCHIE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| DEXTER AXLE COMPANY, | ) |
| | ) |
| Defendant. | ) |

## COMPLAINT

Plaintiff alleges against Defendant as follows:

1. Plaintiff is Joel Ritchie, a qualified employee of the Defendant who, at all times material to this Charge, performed within the reasonable expectations of his employer. Plaintiff alleges that he was discriminated against and retaliated against on the basis of his disability/perceived disability/record of impairment in violation of his rights pursuant to the Americans With Disabilities Act, 42 U.S.C § 12101 *et seq.* ("ADA"). Furthermore, Plaintiff alleges that he was discriminated against and retaliated against for utilizing time off work pursuant to the FMLA to care for his son, and his right to utilize time off work pursuant to the FMLA to care for his own medical needs was interfered with when he was wrongfully terminated after notifying Defendant that he may have cancer and needed time off to undergo further testing.

2. The Defendant is Dexter Axle Company, a company doing business at 500 S 7th Street, Albion, Indiana 46701. Defendant is an "employer" for the purposes of the ADA and

–1–

the FMLA. Defendant's registered agent is CT Corporation System, 334 North Senate Avenue, Indianapolis, IN 46204.

3. Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on November 10, 2020, a copy of which is attached hereto, incorporated herein, and made a part hereof as "Ex. A." The EEOC issued its Dismissal and Notice of Rights on March 30, 2021, a copy of which is attached hereto and made a part hereof as "Ex. B." All administrative remedies have been exhausted, and all jurisdictional requirements have been met for the filing of this lawsuit.

4. Plaintiff worked for the Defendant from approximately November 15, 2016, until his wrongful termination on or about October 19, 2020. At the time of separation from employment, Plaintiff's job title was "production."

5. Plaintiff utilized time off work pursuant to the FMLA in approximately 2018 to care for his own serious chronic medical condition (that he still suffers from today). Defendant is aware of Plaintiff's medical condition for which he previously utilized the FMLA, and the condition makes Plaintiff a qualified person with a disability pursuant to the ADA.

6. Plaintiff had for some time been utilizing time off work pursuant to the FMLA to care for his son and was met with resistance from his HR department on several occasions for doing so. For example, in January 2020, Plaintiff had requested January 8th off to pick up his son's orthotics from his doctor, and Holly Pfiffer (HR personnel leader) challenged whether this day off would be covered under Plaintiff's FMLA. Plaintiff was told at that time that, if he needed any further days off for scheduled appointments, he would need to notify his supervisor and the superintendent that he would be missing work. By

information and belief, co-workers not utilizing the FMLA were not subjected to this requirement of additional notice above and beyond a request for the day off to HR. Further, two weeks later when Plaintiff attempted to follow this new requirement, he was told by his supervisor to only use the attendance line and not bother him with such notice—the superintendent did not even respond to Plaintiff's request.

7. Plaintiff also alleges that he has been refused the opportunity to work overtime as a result of his FMLA usage, and has reported harassment by co-workers regarding his FMLA usage (being called "part-timer," told he was not a "real man," told he was "worthless") to management, yet nothing was done to stop the harassment. In August 2020 Defendant attempted to write up Plaintiff for attendance for days that were utilized pursuant to the FMLA, and Plaintiff had to fight to get the write-up overturned due to the Defendant's error.

8. On October 14, 2020, Plaintiff knew he needed to be off work at 10 a.m. on October 15th to take his son to an appointment and attempted to get alternate hours approved so that he would not have to utilize FMLA time off work.  Plaintiff was given the run-around regarding who he needed to speak with through most of the day, and after talking to his group leader Matt McBride and Dana in HR, he was told he needed to get alternate hours approved by Gary Ramsey, Plaintiff's supervisor.  Plaintiff sent Gary a text message (a customary way of communicating with supervisors) at 2:11 p.m. requesting the alternate hours instead of FMLA time. The following day, after no response was received, Plaintiff approached Gary and questioned whether he had received the message.  Gary responded that he was not able to approve alternate hours without 24 hours' notice, and denied

receiving the text message because he "turns off his phone at 2 p.m." Plaintiff then told Gary that he would have to use FMLA time to leave at 10 a.m. Gary threw his hands up and exclaimed "whatever!", so Plaintiff clocked out at 10 a.m. just as he said he would.

9. The following day, October 16, Plaintiff awoke with a low-grade fever and made an appointment to see his doctor, as he had been experiencing recurring unexplained fevers for some time. Plaintiff called off work, went to the doctor, and was told that the doctor believed that Plaintiff may be suffering from Lymphoma, and needed to request time off work due to the potential cancer diagnosis that required further testing. The doctor suggested that Plaintiff apply for short-term disability, so Plaintiff immediately called Defendant and left a voicemail with Human Resources explaining the possible need for additional time off work, requested an application for short-term disability, and identified that he was preliminarily diagnosed with cancer.

10. The need for further medical care to tend to Plaintiff's own serious health condition was a qualifying event that would trigger Plaintiff's right to utilize the FMLA, and the Defendant's duty to notify Plaintiff that he may qualify for FMLA and provide the necessary paperwork. Defendant failed to do so.

11. A couple hours later Plaintiff received a call from Dana and Holly in HR and was told by Dana that Plaintiff had "never requested using FMLA for Thursday the 15th," which was blatantly untrue. Plaintiff reminded Dana that he had even spoken to her about it, and she had referred him to Gary. Dana persisted and told Plaintiff that he had "pointed out," but then asked if he wanted to come in to work on Saturday the 17th, which made no sense to Plaintiff. He was being told he was fired yet being asked to work that

–4–

upcoming Saturday anyway.  Plaintiff reminded Dana that he was unable to work the 17th as he had requested disability leave due to his possible cancer diagnosis.  Dana and Holly then said they would "check on his points" and call him back on October 19th, 2020.

12. On October 19, 2020, just as promised, Dana and Tammy (another HR co-worker) called Plaintiff and told Plaintiff that neither of them had "heard" Plaintiff ask for FMLA for the 15th, and so he was, in fact, terminated on October 15, 2020.

13. Plaintiff contends that the proffered reason for his termination was false and pretextual, and in reality, he was discriminated against and retaliated against on the basis of his disability/perceived disability/ record of impairment, in violation of his rights pursuant to the ADA.  Furthermore, Plaintiff contends that he was discriminated against and retaliated against for utilizing time off work pursuant to the FMLA, and his right to utilize FMLA to tend to his own serious medical condition was interfered with.

14. Defendant's discriminatory and retaliatory conduct was the direct and proximate cause of Plaintiff suffering the loss of his job and job-related benefits, including income, and subjected him to inconvenience, emotional distress, humiliation, embarrassment, and other damages and injuries.  Plaintiff seeks compensatory damages, including reasonable attorney fees and costs.

15. Furthermore, Defendant's discriminatory and retaliatory conduct was knowing, willful, wanton, and in in reckless disregard of Plaintiff's federally protected rights pursuant to the ADA and FMLA, entitling Plaintiff to an award of punitive and/or liquidated damages.

–5–

WHEREFORE, Plaintiff prays for judgment against the Defendant for compensatory damages, punitive damages, liquidated damages, reasonable attorney fees and costs, and for all other just and proper relief.

## JURY DEMAND

Pursuant to Rule 38 of the Indiana Rules of Trial Procedure, Plaintiff demands a trial by jury in this action.

Respectfully submitted,

**LAW OFFICE OF JENNIFER L. HITCHCOCK**

/s/ Jennifer L. Hitchcock
Jennifer L. Hitchcock, #34635-02
116 E. Berry Street, Suite 625
Fort Wayne, IN 46802
Telephone:   (260) 240-4644
Facsimile:   (260) 444-3441
E-mail:      Jennifer@jhitchcocklaw.com
Attorney for Plaintiff

11:24:38 a.m. 11-10-2020  4  2604443441
2020-11-10 12:00
57D01-2104-CT-000012
0 2604443441 >> 3172267953
Noble Superior court 1
Filed: 4/21/2021 9:29 AM
Clerk
Noble County, Indiana
Equal Employment Opportunity Commission
Indianapolis District Office
RECEIVED 11/10/2020

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA  ☒ EEOC | 470-2021-00661 |

Equal Employment Opportunity Commission _____ and EEOC

*State or local Agency, if any*

| Name (Indicate Mr., Ms., Mrs.) | Home Phone (Incl. Area Code) | Date of Birth |
|---|---|---|
| Joel Ritchie | (260) 242-7235 | 03/24/1992 |

| Street Address | City, State and ZIP Code |
|---|---|
| 5098 N 600 E | Kendallville, IN. 46755 |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two, list under PARTICULARS below.)

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| Dexter Axle | 100+ | (260) 636-2195 |

| Street Address | City, State and ZIP Code |
|---|---|
| 500 S 7th St #1419 | Albion, IN 46701 |

DISCRIMINATION BASED ON (Check appropriate box(es).)

☐ RACE  ☐ COLOR  ☐ SEX  ☐ RELIGION  ☐ NATIONAL ORIGIN
☒ RETALIATION  ☐ AGE  ☒ DISABILITY  ☐ GENETIC INFORMATION
☒ OTHER (Specify) FMLA

DATE(S) DISCRIMINATION TOOK PLACE
Earliest: 10/15/2020   Latest: 10/19/2020
☒ CONTINUING ACTION

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

I. Complainant is Joel Ritchie, a qualified employee of the Respondent who, at all times material to this Charge, performed within the reasonable expectations of his employer. Complainant alleges that he was discriminated against and retaliated against on the basis of his disability/perceived disability/record of impairment in violation of his rights pursuant to the Americans With Disabilities Act, 42 U.S.C § 12101 *et seq.* ("ADA"). Furthermore, Complainant alleges that he was discriminated against and retaliated against for utilizing time off work pursuant to the FMLA to care for his son, and his right to utilize time off work pursuant to the FMLA to care for his own medical needs was interfered with when he was wrongfully terminated after notifying Respondent that he may have cancer and needed time off to undergo further testing.

II. The Respondent is Dexter Axle, a company doing business at 500 S 7th Street, Albion, Indiana 46701. Respondent is an "employer" for the purposes of the ADA and the FMLA.

III. Complainant worked for the Respondent from approximately November 15, 2016, until his wrongful termination on or about October 19, 2020. At the time of separation from employment, Complainant's job title was "production."

IV. Complainant utilized time off work pursuant to the FMLA in approximately 2018 to care for his own serious chronic medical condition (that he still suffers from today). Respondent is aware of Complainant's medical condition for which he previously utilized the FMLA, and the condition makes Complainant a qualified person with a disability pursuant to the ADA.

V. Complainant had for some time been utilizing time off work pursuant to the FMLA to care for his son and was met with resistance from his HR department on several occasions for doing so. For example, in January 2020, Complainant had requested January 8th off to pick up his son's orthotics from his doctor, and Holly Pfiffer (HR personnel leader) challenged whether this day off would be covered under Complainant's FMLA. Complainant was told at that time that, if he needed any further days off for scheduled appointments, he would need to notify his supervisor and the superintendent that he would be missing work. By information and belief, co-workers not utilizing the FMLA were not subjected to this requirement of additional notice above and beyond a request for the day off to HR. Further, two weeks later when Complainant

11:24:38 a.m. 11-10-2020   5   2604443441

2020-11-10 12:00   0 2604443441 >> 3172267953   P 5/6

Equal Employment Opportunity Commission
Indianapolis District Office

RECEIVED Nov 10 2020

470-2021-00661

attempted to follow this new requirement, he was told by his supervisor to use the attendance line and not bother him with such notice—the superintendent did not even respond to Complainant's request.

VI. Complainant also alleges that he has been refused the opportunity to work overtime as a result of his FMLA usage, and has reported harassment by co-workers regarding his FMLA usage (being called "part-timer," told he was not a "real man," told he was "worthless") to management, yet nothing was done to stop the harassment. In August 2020 Respondent attempted to write up Complainant for attendance for days that were utilized pursuant to the FMLA, and Complainant had to fight to get the write-up overturned due to the Respondent's error.

VII. On October 14, 2020, Complainant knew he needed to be off work at 10 a.m. on October 15th to take his son to an appointment and attempted to get alternate hours approved so that he would not have to utilize FMLA time off work. Complainant was given the run-around regarding who he needed to speak with through most of the day, and after talking to his group leader Matt McBride and Dana in HR, he was told he needed to get alternate hours approved by Gary Ramsey, Complainant's supervisor. Complainant sent Gary a text message (a customary way of communicating with supervisors) at 2:11 p.m. requesting the alternate hours instead of FMLA time. The following day, after no response was received, Complainant approached Gary and questioned whether he had received the message. Gary responded that he was not able to approve alternate hours without 24 hours' notice, and denied receiving the text message because he "turns off his phone at 2 p.m." Complainant then told Gary that he would have to use FMLA time to leave at 10 a.m. Gary threw his hands up and exclaimed "whatever!", so Complainant clocked out at 10 a.m. just as he said he would.

VIII. The following day, October 16, Complainant awoke with a low-grade fever and made an appointment to see his doctor, as he had been experiencing recurring unexplained fevers for some time. Complainant called off work, went to the doctor, and was told that the doctor believed that Complainant may be suffering from Lymphoma, and needed to request time off work due to the potential cancer diagnosis that required further testing. The doctor suggested that Complainant apply for short-term disability, so Complainant immediately called Respondent and left a voicemail with Human Resources explaining the need for an application for short-term disability and identified that he was preliminarily diagnosed with cancer.

IX. A couple hours later Complainant received a call from Dana and Holly in HR and was told by Dana that Complainant had "never requested using FMLA for Thursday the 15th," which was blatantly untrue. Complainant reminded Dana that he had even spoken to her about it, and she had referred him to Gary. Dana persisted and told Complainant that he had "pointed out," but then asked if he wanted to come in to work on Saturday the 17th, which made no sense to Complainant. He was being told he was fired yet being asked to work that upcoming Saturday anyway. Complainant reminded Dana that he was unable to work the 17th as he had requested disability leave due to his possible cancer diagnosis. Dana and Holly then said they would "check on his points" and call him back on October 19th, 2020.

X. On October 19, 2020, just as promised, Dana and Tammy (another HR co-worker) called Complainant and told Complainant that neither of them had "heard" Complainant ask for FMLA for the 15th, and so he was, in fact, terminated on October 15, 2020.

XI. Complainant contends that the proffered reason for his termination was false and pretextual, and in reality, he was discriminated against and retaliated against on the basis of his disability/perceived disability/ record of impairment, in violation of his rights pursuant to the ADA. Furthermore, Complainant contends that he was discriminated against and retaliated against for utilizing time off work pursuant to the FMLA, and his right to utilize FMLA to tend to his own serious medical condition was interfered with.

XII. Respondent's discriminatory and retaliatory conduct was the direct and proximate cause of Complainant suffering the loss of his job and job-related benefits, including income, and subjected him to inconvenience, emotional distress, humiliation, embarrassment, and other

11:24:38 a.m. 11-10-2020  6  2604443441
2020-11-10 12:00   0 2604443441 >> 3172267953  Equal Employment Opportunity Commission
Indianapolis District Office  P. 6/6

damages and injuries. Complainant seeks compensatory damages, including reasonable attorney fees and costs.

XIII. Furthermore, Respondent's discriminatory and retaliatory conduct was knowing, willful, wanton, and in in reckless disregard of Complainant's federally protected rights pursuant to the ADA and FMLA, entitling Complainant to an award of punitive and/or liquidated damages.

| | |
|---|---|
| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.<br><br>I declare under penalty of perjury that the above is true and correct.<br><br>11/10/20<br>Date    Charging Party Signature | NOTARY – When necessary for State and Local Agency Requirements<br><br>I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT<br><br>SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year)<br>11/10/20 |



Crystal M Lutes — Notary Public Seal — My Commission Expires 08-31-2028 — Commission Number NP0728493 — Allen County — State of Indiana

**57D01-2104-CT-000012**

Filed: 4/21/2021 9:29 AM
Clerk
Noble County, Indiana

EEOC Form 161 (11/2020)       U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

Noble Superior Court 1

## DISMISSAL AND NOTICE OF RIGHTS

To: Joel Ritchie
5098 N 600 E
Kendallville, IN 46755

From: Indianapolis District Office
101 West Ohio Street
Suite 1900
Indianapolis, IN 46204

[ ] On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 470-2021-00661 | Marc A. Fishback, Enforcement Supervisor | (463) 999-1179 |

**THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:**

[ ] The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

[ ] Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

[ ] The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

[ ] Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

[X] The EEOC issues the following determination: The EEOC will not proceed further with its investigation, and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge.

[ ] The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

[ ] Other (briefly state)

- NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

On behalf of the Commission

_____  3/30/21
Michelle Eisele,                (Date Issued)
District Director

Enclosures(s)

cc:  Dexter Axle
C/O Angela Johnson
Faegre Drinker Biddle & Reath LLP
300 N MERIDIAN ST, STE 2500
Indianapolis, IN 46204

Jennifer L. Hitchcock
LAW OFFICE OF JENNIFER HITCHCOCK
116 E Berry Street
Suite 1110
Fort Wayne, IN 46802

Enclosure with EEOC
Form 161 (11/2020)

# INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court under Federal law.
If you also plan to sue claiming violations of State law, please be aware that time limits and other
provisions of State law may be shorter or more limited than those described below.)*

**PRIVATE SUIT RIGHTS** -- **Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA), the Genetic Information Nondiscrimination Act (GINA), or the Age Discrimination in Employment Act (ADEA):**

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within 90 days** of the date you *receive* this Notice. Therefore, you should **keep a record of this date**. Once this 90-day period is over, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and its envelope or record of receipt, and tell him or her the date you received it. Furthermore, in order to avoid any question that you did not act in a timely manner, it is prudent that your suit be filed **within 90 days of the date this Notice was *issued*** to you (as indicated where the Notice is signed) or the date of the postmark or record of receipt, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. (Usually, the appropriate State court is the general civil trial court.) Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. Filing this Notice is not enough. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Your suit may include any matter alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters alleged in the charge. Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some cases can be brought where relevant employment records are kept, where the employment would have been, or where the respondent has its main office. If you have simple questions, you usually can get answers from the office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint or make legal strategy decisions for you.

**PRIVATE SUIT RIGHTS** -- **Equal Pay Act (EPA):**

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back pay due for violations that occurred **more than 2 years (3 years)** before you file suit may not be collectible. For example, if you were underpaid under the EPA for work performed from 7/1/08 to 12/1/08, you should file suit before 7/1/10 – *not* 12/1/10 -- in order to recover unpaid wages due for July 2008. This time limit for filing an EPA suit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA claim, suit must be filed within 90 days of this Notice and within the 2- or 3-year EPA back pay recovery period.

**ATTORNEY REPRESENTATION** -- **Title VII, the ADA or GINA:**

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction in your case may, in limited circumstances, assist you in obtaining a lawyer. Requests for such assistance must be made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your efforts to retain an attorney). Requests should be made well before the end of the 90-day period mentioned above, because such requests do not relieve you of the requirement to bring suit within 90 days.

**ATTORNEY REFERRAL AND EEOC ASSISTANCE** -- **All Statutes:**

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any questions about your legal rights, including advice on which U.S. District Court can hear your case. If you need to inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide your charge number (as shown on your Notice). While EEOC destroys charge files after a certain time, all charge files are kept for at least 6 months after our last action on the case. Therefore, if you file suit and want to review the charge file, **please make your review request within 6 months** of this Notice. (Before filing suit, any request should be made within the next 90 days.)

*IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.*

Enclosures(s)

cc: **Jennifer L. Hitchcock**
**LAW OFFICE OF JENNIFER HITCHCOCK**
**116 E Berry Street**
**Suite 1110**
**Fort Wayne, IN 46802**

**NOTICE OF RIGHTS UNDER THE ADA AMENDMENTS ACT OF 2008 (ADAAA):** The ADA was amended, effective January 1, 2009, to broaden the definitions of disability to make it easier for individuals to be covered under the ADA/ADAAA. A disability is still defined as (1) a physical or mental impairment that substantially limits one or more major life activities (actual disability); (2) a record of a substantially limiting impairment; or (3) being regarded as having a disability. *However, these terms are redefined, and it is easier to be covered under the new law.*

<u>If you plan to retain an attorney to assist you with your ADA claim, we recommend that you share this information with your attorney and suggest that he or she consult the amended regulations and appendix, and other ADA related publications, available at http://www.eeoc.gov/laws/types/disability_regulations.cfm.</u>

"Actual" disability or a "record of" a disability (note: if you are pursuing a failure to accommodate claim you must meet the standards for either "actual" or "record of" a disability):

- **The limitations from the impairment no longer have to be severe or significant** for the impairment to be considered substantially limiting.
- In addition to activities such as performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, thinking, concentrating, reading, bending, and communicating (more examples at 29 C.F.R. § 1630.2(i)), **"major life activities" now include the operation of major bodily functions**, such as: functions of the immune system, special sense organs and skin; normal cell growth; and digestive, genitourinary, bowel, bladder, neurological, brain, respiratory, circulatory, cardiovascular, endocrine, hemic, lymphatic, musculoskeletal, and reproductive functions; or the operation of an individual organ within a body system.
- **Only one** major life activity need be substantially limited.
- With the exception of ordinary eyeglasses or contact lenses, **the beneficial effects of "mitigating measures"** (e.g., hearing aid, prosthesis, medication, therapy, behavioral modifications) **are not considered** in determining if the impairment substantially limits a major life activity.
- An impairment that is **"episodic"** (e.g., epilepsy, depression, multiple sclerosis) or **"in remission"** (e.g., cancer) is a disability if it **would be substantially limiting when active**.
- An impairment **may be substantially limiting even though** it lasts or is expected to last **fewer than six months**.

"Regarded as" coverage:
- An individual can meet the definition of disability if an **employment action was taken because of an actual or perceived impairment** (e.g., refusal to hire, demotion, placement on involuntary leave, termination, exclusion for failure to meet a qualification standard, harassment, or denial of any other term, condition, or privilege of employment).
- "Regarded as" coverage under the ADAAA no longer requires that an impairment be substantially limiting, or that the employer perceives the impairment to be substantially limiting.
- The employer has a defense against a "regarded as" claim only when the impairment at issue is objectively *BOTH* transitory (lasting or expected to last six months or less) *AND* minor.
- A person is not able to bring a failure to accommodate claim *if* the individual is covered only under the "regarded as" definition of "disability."

*Note: Although the amended ADA states that the definition of disability "shall be construed broadly" and "should not demand extensive analysis," some courts require specificity in the complaint explaining how an impairment substantially limits a major life activity or what facts indicate the challenged employment action was because of the impairment. Beyond the initial pleading stage, some courts will require specific evidence to establish disability.* For more information, consult the amended regulations and appendix, as well as explanatory publications, available at http://www.eeoc.gov/laws/types/disability_regulations.cfm.